# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

Nos. 24-3291 & 24-3374

PROSPECT CAPITAL MANAGEMENT L.P.,
Appellant in 24-3291

v.

STRATERA HOLDINGS, LLC; DESTRA CAPITAL MANAGERS LLC

STRATERA HOLDINGS, LLC,
Appellant in 24-3374

_____

On Appeal from the U.S. District Court, D. Del.
Judge Jennifer L. Hall, No. 1:22-mc-00089

Before: PORTER, MONTGOMERY-REEVES, and BOVE, *Circuit Judges*
Argued: Apr. 8, 2026; Filed: Aug. 4, 2026
_____

OPINION OF THE COURT

PORTER, *Circuit Judge*.

This arbitration appeal arises from a dispute over the distribution of administrative fees earned from the sale of shares in a co-owned management fund. Stratera Holdings, LLC ("Stratera") and Destra Capital Managers, LLC

("Destra") initiated arbitration against Prospect Capital Management L.P. ("Prospect"), arguing that Prospect had improperly excluded certain categories of shares from the calculations of their fee award. The arbitration panel found that Prospect had violated the parties' contract by excluding one category of those shares, but it wasn't clear how the panel's decision applied to the rest of the categories of disputed shares. When the parties raised this issue, the arbitration panel issued a revised award clarifying that its earlier decision applied to all categories of disputed shares. Prospect sued in the United States District Court for the District of Delaware, arguing that the revised award violated the *functus officio* doctrine, which prohibits arbitrators from revisiting their prior decisions. But there are exceptions to *functus officio*, and the District Court held that the arbitration panel's revised award fit within the ambiguity exception. We agree and will therefore affirm.

I

A

Prospect and Stratera jointly launched the Priority Income Fund ("the Fund"). From 2012 through 2018, Stratera's subsidiary, Provasi Capital Partners LP ("Provasi"), served as the Fund's wholesaler. In that role, Provasi issued shares one of two ways: (1) through initial offerings, or (2) when it came time to distribute dividends, shareholders could opt to receive either cash or new shares issued through the Fund's dividend reinvestment program ("DRIP"). Prospect and Stratera evenly split administrative fees from both kinds of share distributions.

In 2018, Provasi enlisted Destra to take over its dealer responsibilities as sub-wholesaler. The fee arrangement in the new contract was more complicated—Prospect would still receive 50% of the fees, but Stratera and Destra would split the other 50%.

Buried in the fee arrangement was the seed of a future dispute. The contract provides that Stratera and Destra would receive a percentage of fees for shares that Destra "issued in an Offering." Joint Appendix ("J.A.") at 144, 148. However, Schedule 11.18 of the contract provides an example of how to calculate those fees, with Destra's fees based on the "fund shares issued and outstanding through [Destra] acting as sub-wholesaler." J.A. at 166 (capitalization omitted). That line does not distinguish between DRIP shares or those distributed via initial offering.

In its role as administrator over the distribution of fees, Prospect—relying on the language limiting fees to those shares "issued in an Offering," J.A. at 144, 148—excluded DRIP shares issued by Provasi and Destra from the calculation for fees owed to Stratera and Destra.

B

In response to Prospect's fee calculations, Stratera and Destra initiated arbitration pursuant to Section 11.15 of the contract, which requires that disputes shall be submitted to arbitration and that the arbitration award shall "be in writing" and "briefly state the findings of fact and conclusions of law on which it is based." J.A. at 152–53. The contract also provided that the Commercial Arbitration Rules of the

3

American Arbitration Association ("AAA Rules") would govern any arbitration dispute.

The arbitration panel held an eight-day evidentiary hearing and issued an "Interim Award," which determined the issue of liability but reserved the calculation of damages. J.A. at 187–88. The interim award included findings of fact, conclusions of law, and a "Holding" section, in which the panel concluded that:

> Based on the findings of fact and conclusions of law stated below, we hold that [Prospect] has breached the [contract] by not calculating the fees such that the Stratera Fee Party Shares and Destra Fee Party Shares included DRIP shares in lieu of cash dividends that would have otherwise been due *on the shares for which [Destra] served as sub-wholesaler*.

J.A. at 174–75 (emphasis added). The holding section then provided that "[a]ll other claims and relief sought are dismissed." J.A. at 175.

When the parties conferred to calculate the fees owed under the arbitration award, a disagreement arose over whether that award applied to DRIP shares for which Provasi served as wholesaler as well as those for which Destra served as sub-wholesaler. The arbitration panel issued a revised interim award clarifying that Prospect owed fees for "DRIP shares flowing from shares for which Provasi served as wholesaler/dealer manager or [Destra] served as sub-wholesaler." J.A. at 190, 194. On the same day, it also issued

"Order #22," which explained why the revision was permitted under two exceptions to *functus officio*.

The panel issued its final award on March 11, 2022, in which it ordered Prospect to pay approximately $11 million in unpaid fees, post-award interest, pre-award interest, and attorneys' fees. Prospect claims the impact of the panel's revised interim award is to expand its liability "more than twenty-fold, from under $300,000 to nearly $7 million" in unpaid fees. J.A. at 17.

C

Prospect filed a petition in the United States District Court for the District of Delaware to vacate the revised interim and final awards under 9 U.S.C. § 10(a)(4) and to restore the initial interim award. Stratera and Destra filed a counter-petition and cross-motion to enforce the final award under 9 U.S.C. § 9. On May 26, 2023, Magistrate Judge Christopher Burke issued a thorough report and recommendation proposing that Stratera and Destra's cross-motion be granted and Prospect's petition be denied. He agreed with the arbitration panel that the ambiguity exception to *functus officio* justified the issuance of the interim award.

After both parties submitted objections to portions of the R&R, the District Court adopted it in full. Prospect timely appealed.

II

The District Court exercised jurisdiction under 28 U.S.C. § 1332 because the parties are diverse in citizenship.

5

*See Badgerow v. Walters*, 596 U.S. 1, 4–5, 8–9 (2022). We have jurisdiction under 9 U.S.C. § 16(a)(1)(D).

"On appeal from a district court's ruling on a motion to confirm or vacate an arbitration award, we review its legal conclusions de novo and its factual findings for clear error." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012), *aff'd*, 569 U.S. 564 (2013). "Because parties litigating the validity of an arbitration award have bargained for the arbitrator's judgment, courts may not review the merits of the award." *Verizon Pa. LLC v. Commc'ns Workers of Am., AFL-CIO, Loc. 1300*, 13 F.4th 300, 306 (3d Cir. 2021). Rather, as relevant here, we may vacate an award only where the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

III

A

Prospect argues the arbitration panel violated *functus officio* by issuing the revised interim award to supersede the interim award. Generally, "courts must defer to an arbitrator's initial decision," but under the *functus officio* doctrine courts will prevent "an arbitrator from revisiting the merits of an award once it has issued." *Verizon*, 13 F.4th at 306 (quoting *Office & Pro. Emps. Int'l Union, Loc. No. 471 v. Brownsville Gen. Hosp.*, 186 F.3d 326, 331 (3d Cir. 1999)). This doctrine functions to preclude "the potential evil of outside communication and unilateral influence which might affect a new conclusion." *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 332 (3d Cir. 1991). That's a heightened risk in

6

arbitration because "the continuity of judicial office and the tradition which surrounds judicial conduct is lacking in the isolated activity of an arbitrator." *Id.*; *see also Brownsville Gen. Hosp.*, 186 F.3d at 331 ("The [*functus officio*] doctrine is motivated by a perception that arbitrators, lacking the institutional protection of judges, may be more susceptible to outside influences pressuring for a different outcome and also by the practical concern that the ad hoc nature of arbitral tribunals makes them less amenable to re-convening than a court.").

By design, *functus officio* can be harsh, but its rough edges are smoothed in two ways. First, *functus officio* is only a "default legal rule[]," and the parties can contract around it if they wish. *Verizon*, 13 F.4th at 303. Here, though, the parties adopted the AAA Rules in the contract. And AAA Rule 52 (which was Rule 50 at the time of the arbitration) provides that "[t]he arbitrator is not empowered to re-determine the merits of any claim already decided." Thus, the parties "specifically bargained for the [*functus officio*] doctrine to apply." *Verizon*, 13 F.4th at 307.

*Functus officio* is a doctrine of judicial creation, its contours defined by our precedents. However, in their adoption of AAA Rule 9, the parties bargained to give the arbitrator power to "interpret and apply these Rules insofar as they relate to the arbitrator's powers and duties." Rule 9 therefore allocates to the arbitrators expansive authority to mark the outer boundaries of *functus officio*. So we afford broad deference to the arbitration panel's interpretation and application of *functus officio*. *See Sutter*, 569 U.S. at 569 ("Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even

7

arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits. Only if the arbitrator acts outside the scope of his contractually delegated authority — issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract — may a court overturn his determination.") (citation modified).

The second way in which our precedents soften *functus officio*'s application is through its three exceptions. An arbitrator can revise an award (1) to "correct a mistake which is apparent on the face of his award," (2) "where the award does not adjudicate an issue which has been submitted," and (3) where the award is ambiguous because, "although seemingly complete," it "leaves doubt whether the submission has been fully executed." *Verizon*, 13 F.4th 307 (citation modified).

Destra confines its arguments on appeal to the third exception—what we call the ambiguity exception.[1] Stratera joins Destra in arguing that the ambiguity exception applies, but it also renews other arguments it made below: that (1) the modification was permitted by the second exception,

---

[1] Although at first blush, the panel's revised award may seem to fit within the first exception, that exception applies only to "clerical mistakes or obvious errors in arithmetic computation." *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 332 (3d Cir. 1991). Were it more expansive, parties could, "under the guise of a mistake in fact, seek recourse directly from the arbitrators in an attempt to overturn an adverse award." *Id.* As such, neither the arbitration panel nor the appellees relied on the first exception.

(2) Prospect consented to the arbitration panel's modification of the award, (3) the interim award was not final for purposes of liability, and (4) *functus officio* is no longer good law.

Because we hold that the ambiguity exception applies, we need not reach Stratera's former two arguments. But contrary to the District Court's assumption, we must address the latter two arguments because they are threshold questions.

B

1

*Functus officio* applies only to an arbitrator's "final award." *See, e.g.*, *id.* at 333; *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 572 (3d Cir. 1967). Stratera claims the "Interim Award" wasn't final because it reserved decision on the remedy issue. We rejected a nearly identical argument in *Verizon*, where the appellees argued that the award was not final and *functus officio* did not apply because "ancillary issues," i.e., "the monetary remedy," had not been decided. 13 F.4th at 309. In that case, as here, the arbitrators issued a "merits award" that resolved the issue of liability but "referred the issue of money damages back to the parties for resolution and retained jurisdiction in case the Parties could not agree on a monetary remedy." *Id.* at 305 (citation modified). When the parties could not agree, they submitted the money-damages issue back to the panel, which issued a "Remedy Award" that "improperly expanded the scope of the violation identified in the Merits Award." *Id.* at 304.

"Such revisions," we held, "are precisely what the *functus officio* doctrine prohibits." *Id.* "[T]he existence of the

9

doctrine's second exception implies that the doctrine applies to partial decisions that finally resolve some, but not all, of the submitted issues." *Id.* at 308. Requiring finality on all issues before the doctrine applies would permit the very "types of *post hoc* influences and *ex parte* communications that the doctrine is meant to protect against." *Id.* at 309. And "an arbitrator could issue a partial award as a placeholder to apply settlement pressure, rather than just adjudicating the dispute as the parties agreed she would." *Id.*

As in *Verizon*, the interim award here was a final award on the issue of liability. The interim award outlined all "claims and relief sought," granted relief on some claims, and "dismissed" the rest. J.A. at 172–75. The panel further noted that proceedings would be "reopened after this interim award is issued to address attorney's fees and an updated damages calculation." J.A. at 172. Prospect had "two weeks from the date of" the award to coordinate with Stratera and Destra to calculate damages and attorneys' fees. J.A. at 187–88. After the parties made the subsequent "joint submission," the panel noted it would either "issue questions to the parties or schedule a hearing. If there are no questions, then the Panel will issue a final award." J.A. at 188. Thus, exactly as in *Verizon*, the arbitration panel resolved issues of liability and reserved the issue of monetary damages. That the issue of monetary damages was unresolved does not affect the finality of the panel's liability determination.

Stratera raises several counterarguments, but none convince. First, it attempts to distinguish *Verizon*, arguing "the only issue before the *Verizon* court was whether an arbitrator's award addressing liability but not damages was final when **only** liability issues had been submitted to the arbitrator."

10

Stratera Resp. Br. at 54. That's incorrect. In *Verizon*, "[t]he Board defined the issue submitted as whether Verizon violated the CBA," "[a]nd if so, *what shall be the remedy*?" 13 F.4th at 304–05 (emphasis added). Thus, both liability and remedy were submitted to the panel, but it released its merits award first and the remedy award later.

Second, Stratera suggests that *Verizon* does not control because the "primary" remedy sought here was monetary, whereas the "primary relief sought [in *Verizon*] was injunctive." Stratera Resp. Br. at 53. As Magistrate Judge Burke correctly noted, this distinction "was simply immaterial to the *Verizon* Court's *functus officio*-related holding." J.A. at 32.

Third, Stratera claims that the panel "made clear its intention that the Interim Award not be final." Stratera Resp. Br. at 55. But everything it cites from Order #21, Order # 22, the interim award, and the final award simply reaffirms that the panel intended the interim award to finally resolve liability and reserve the issue of damages for later.

Finally, Stratera argues we should import the finality standard from the "complete arbitration rule." Stratera Resp. Br. at 51–56. Under that rule, judicial review of an arbitration is precluded until it is final; and an arbitration is not final if "the arbitrators have decided liability but not the remedy when they are authorized to decide both issues." *PG Publ., Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 322 (3d Cir. 2021). This rule "is animated by similar policies as the final judgment rule, but only the latter is jurisdictional." *Id.* at 321 n.14.

11

Whatever the strength of Stratera's argument, it is precluded by our case law. In *PG Publishing*, we required the *arbitration* to be final for purposes of judicial review to streamline the litigation process. In *Verizon*, we clarified that each *issue* must be final for *functus officio* to attach; indeed, we expressly rejected an argument that the arbitration as a whole must be final. 13 F.4th at 308–09. *Functus officio* and the complete arbitration rule apply in different contexts and serve different purposes, so we will not apply the latter here.

2

Stratera's second threshold issue is its claim that *functus officio* is "irreconcilable with the U.S. Supreme Court's 2022 holding" in *Morgan v. Sundance*, 596 U.S. 411 (2022). Stratera Resp. Br. at 61. The Supreme Court in *Morgan* addressed whether federal courts "may create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's policy favoring arbitration." 596 U.S. at 417 (citation modified). The Court held that they cannot. *Id.*

Several reasons underlie the *Morgan* Court's holding. First, the general appellate waiver rule "applies to the waiver of a contractual right, as of any other." *Id.* In other words, there was no reason to apply a more favorable, judge-made waiver rule to arbitration contracts instead of the usual waiver rule. Second, the Court noted the questionable historical pedigree of the arbitration-specific waiver rule—it derived from a fairly modern Second Circuit decision that relied on the "policy favoring arbitration." *Id.* at 417–18 (quoting *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968)). But the policy favoring arbitration "does not authorize federal courts to invent

12

special, arbitration-preferring procedural rules" that "favor arbitration over litigation." *Id.* at 418.

Third, the Supreme Court held that the "text of the FAA," which requires arbitration petitions in federal court to proceed "in the manner provided by law," makes clear that "courts are not to create arbitration-specific procedural rules like the one we address here." *Id.* at 419 (quoting 9 U.S.C. § 6). The Court instructed courts to apply the "federal procedural rules" rather than devising "custom-made rules" that "tilt the playing field in favor of (or against) arbitration." *Id.*

Stratera claims the arbitration-specific waiver rule rejected in *Morgan* "is analogous to the judge-made addition of a federal common law *functus officio* limitation on the enforcement of arbitration awards under FAA § 10(a)(4)." Stratera Resp. Br. at 62. We disagree. *Functus officio* is not an "arbitration-specific variant of [a] federal procedural rule[,]" *Morgan*, 596 U.S. at 417, but rather an arbitration-*only* rule without analogue in the federal rules. As a result, it does not "favor arbitration over litigation," or arbitration agreements over "other contracts." *Id.* at 418. And it did not sprout from a single circuit decision that relied on the general policy favoring arbitration. Unlike the arbitration-specific rule in *Morgan*, *functus officio* derives from common law and preceded the FAA, which doesn't abrogate the doctrine in any way. *See United States v. Texas*, 507 U.S. 529, 534 (1993) ("Just as longstanding is the principle that statutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.") (citation modified); *see Verizon*, 13 F.4th at 307 (noting the doctrine's common law heritage); *see generally Bayne v. Morris*, 68 U.S.

13

97, 99 (1863) (applying *functus officio*). For the same reason, the statutory language cited in *Morgan* doesn't have any bearing on this case.

Thus, *Morgan* does not abrogate *functus officio* because it is not a derivation of a general federal procedural rule that federal courts tweaked to favor arbitration. It is a longstanding common-law doctrine applying to arbitrations specifically. "[I]t has never been abrogated," and "it is alive and well in this Court." *Verizon*, 13 F.4th at 307 (citation modified).

C

Having considered Stratera's threshold arguments, we now turn to the main issue on appeal: the ambiguity exception. This exception permits revision "[w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed, [such that] an ambiguity arises which the arbitrator is entitled to clarify." *Id.* An ambiguity arises "where an arbitral award 'fails to address a contingency that later arises or when the award is susceptible to more than one interpretation.'" *Gen. Re Life Corp. v. Lincoln Nat'l Life Ins. Co.*, 909 F.3d 544, 548 (2d Cir. 2018) (quoting *Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Loc. No. 24*, 357 F.3d 546, 554 (6th Cir. 2004)). The parties dispute the latter application—whether the interim award is susceptible to more than one interpretation.

1

Prospect relies on the interim award's "Holding" section to argue that it was unambiguous. In the holding, the arbitration panel stated that Prospect breached the contract "by

not calculating the fees such that the Stratera Fee Party Shares and Destra Fee Party Shares included DRIP shares in lieu of cash dividends that would have otherwise been due on the shares for which [Destra] served as sub-wholesaler." J.A. at 174–75. It then held that "[a]ll other claims and relief sought are dismissed." J.A. at 175. Because the panel's self-styled "holding" provided relief for Destra-issued DRIP shares but didn't mention Provasi-issued DRIP shares and denied all other claims for relief, Prospect claims the award is unambiguous. That's a compelling point.

But there are other portions of the panel's opinion that might lead a reasonable person to believe that Provasi-issued DRIP shares were indeed included in the award. Magistrate Judge Burke ably and extensively addressed this issue, so we focus only on the most critical facts. First, the issue of Provasi-issued DRIP shares was clearly presented to the arbitration panel. It is a settled adjudicatory principle that "matters pertinent to an issue before a court and which were clearly presented to it, by brief or appendix thereto, are to be taken as covered by the court's decision though not mentioned in the opinion." *Pennsylvania v. Brown*, 373 F.2d 771, 777 (3d Cir. 1967) (citing *Bingham v. United States*, 296 U.S. 211, 218–19 (1935)). Second, the panel's opinion repeatedly mentions the "claimants," which naturally refers to both Destra and Stratera (Provasi's parent), and "DRIP shares" generally, not Destra-issued DRIP specifically. *See* J.A. at 42–45. Third, the panel relied heavily on Section 11.18 and Schedule 11.18. Section 11.18 states that Prospect "shall calculate the Destra Fee Party Percentage, Stratera Fee Party Percentage and [Prospect] Fee Party Percentage in accordance with Schedule 11.18." J.A. at 156. Schedule 11.18, in turn, instructs that the Stratera Fee Party Share includes shares issued "prior to May 11, 2018,"

15

which can refer only to shares issued by Provasi before Destra took over. J.A. at 166. These facts permit the reasonable inference that Provasi-issued DRIP shares were included in the panel's initial award, thereby creating an ambiguity.

2

Prospect claims the District Court and magistrate judge erred by concluding that "the panel's *reasoning* rendered the clear holding ambiguous," emphasizing that what matters is that "the panel's holding was clear on its face." Prospect Br. at 30 (emphasis partially omitted). Prospect confuses matters. The relevant dichotomy is not *holding* versus *reasoning*, but *award* versus *opinion*. In *Verizon*, we cited the settled rule that a "mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." 13 F.4th at 310 (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960)); *see also, e.g.*, *United Steelworkers of Am., Loc. 4839 v. New Idea Farm Equip. Corp.*, 917 F.2d 964, 968 (6th Cir. 1990) ("An ambiguity in the opinion is not enough, however; the ambiguity must be in the award itself."); *Int'l Ass'n of Machinists & Aerospace Workers v. San Diego Marine Constr. Corp.*, 620 F.2d 736, 739 (9th Cir. 1980) ("To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions.").[2]

---

[2] This rule can be analogized to court judgments and their accompanying opinions. *See, e.g.*, *In re Int'l Admin Servs.*, 408 F.3d 689, 700 (11th Cir. 2005) ("Where an order is ambiguous, its extent must be determined by what preceded it and what it was intended to execute. Moreover, we may use a

16

Prospect would have us equate the panel's "holding" with the "award" referenced in the case law. But at the end of the panel's sixteen-page opinion, there is a section labeled "Interim Award" in the style of a dispositional court order. J.A. at 187–188. This section closely mirrors the "Award" section that followed the arbitrator's 24-page merits opinion in *Verizon*. *See* Merits Award at 25, *Verizon Pa. LLC v. Comms. Workers Of Am., AFL-CIO, Loc. 13000 et al.*, No. 18-cv-00394 (E.D. Pa. Aug. 19, 2019), ECF No. 29-1. There, the "Award" section after the merits opinion referenced the "delivery work in question," *id.*, which we concluded was ambiguous, *Verizon*, 13 F.4th at 310. So we looked to the written opinion above it and found that "it is obvious from the Merits Opinion that the Remedy Award revised the Merits Award and thus exceeded the Board's authority under the *functus officio* doctrine." *Id.*

The "Interim Award" section here is comparably ambiguous. Whereas the *Verizon* merits award referred to "delivery work in question," the interim award here refers to the "above-described DRIP Shares." J.A. at 187. Thus, the "Award" itself does not elucidate which DRIP shares it covers. Nor does it distinguish between the holding section and the rest of the opinion. In deciding what it means by the "above-described DRIP Shares," we should follow the award's

memorandum opinion to determine the intent of the court in issuing that order.") (citation modified); *United States v. DAS Corp.*, 18 F.4th 1032, 1040 (9th Cir. 2021) ("When construing a judgment, we look to the natural reading of its text. If the judgment is unambiguous, the court may not consider extraneous evidence to explain it.") (citation modified).

instruction (and our example in *Verizon*) and look to the accompanying opinion to determine which shares are covered.

Once there, as with a judicial opinion, we consider both the holding and the *ratio decidendi*. *See* Bryan A. Garner et al., *The Law of Judicial Precedent* 59 (2016) ("[W]hile the court's statement of the holding is important, it doesn't necessarily decide the matter. One must still determine how to formulate the holding exactly."). As we explained above, the panel's holding and reasoning is susceptible to more than one interpretation as to which DRIP shares are included. So it is ambiguous.

3

To be sure, Prospect's reading of the interim award isn't frivolous. Prospect reasonably believes the "Holding" unambiguously awards fees for Destra-issued shares *only* and denies all other claims for relief. Meanwhile, the rest of the opinion includes reasoning that implies—but does not expressly state—that the award also applies to Provasi-issued shares. Indeed, Provasi-issued shares are never even mentioned outside the fact section. With such an unambiguous statement in the holding section, and less express reasoning in the other direction, one might fairly think that Prospect has the better reading. But by bargaining for AAA Rule 9, Prospect agreed to submit the interpretation and application of AAA Rule 52 (i.e., *functus officio*) to the arbitrators, so we defer to the arbitral panel's application of the doctrine so long as it "even arguably constru[es] or appl[ies] the contract." *Sutter*, 569 U.S. at 569. Unlike with the remedy award in *Verizon*, and for the reasons above, the panel's revised interim award was at least a

18

rational clarification of its earlier award. We therefore defer to its clarification.

\* \* \*

For these reasons, we will affirm the District Court's Order.

*Counsel for Appellant*
Raymond J. DiCamillo
Katharine L. Mowery
RICHARDS, LAYTON & FINGER, P.A.

Meir Feder [*Argued*]
JONES DAY

*Counsel for Appellee Destra*
Michael E. Kenneally
Laura Hughes McNally [*Argued*]
Brian Loughnane
MORGAN LEWIS & BOCKIUS

*Counsel for Appellee Stratera*
Timothy R. Dudderar
POTTER ANDERSON & CORROON LLP

Bobby G. Pryor [*Argued*]
Matthew D. Hill
PRYOR & HILL